IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOE VIRGIL BLACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACT. NO.  3:11CV1008-CSC |
| ) | (WO) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

On March 3, 2009, the Plaintiff, Joe Virgil Black, protectively filed applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* (R. 168-172). Black alleged that his date of disability onset was January 3, 2009. (R. 168, 170). His application was denied at the initial administrative level. Black then requested and received a hearing before an Administrative Law Judge ("ALJ"). On July 2, 2010, following the hearing, ALJ Maria Kusznir also denied the claim. (R. 44). On September 28, 2011, the Appeals Council rejected a subsequent request for review. (R. 1). The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner"). See *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

1986).[2]  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination[3] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the claimant presently unemployed?
> (2) Is the claimant's impairment severe?
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his or former occupation?
> (5) Is the claimant unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ISSUES

**A. Introduction.**   Black was born on March 23, 1959. (R. 168). He has a twelfth

---

[4] *McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. *See Sullivan v. Zebley*, 493 U.S. 521,525 n.3 (1990). Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Sullivan*, 493 U.S. at 525 n.3; *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

grade education. (R. 57). His past work experience includes work as a commercial long-haul truck driver. (R. 59-60). He alleges that he cannot work due to loss of vision, back pain, and paranoia. (R. 60, 63, 65). Following the administrative hearing, the ALJ concluded that Black had severe impairments of mild facet arthropathy and maculopathy, but that the record did not support a finding that his alleged mental impairment a severe impairment. (R. 23-34).

The ALJ further concluded that Black's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. (R. 34-36). The ALJ determined that Black had the residual functional capacity

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs; however, he should always use a handrail when traversing either. He can frequently balance, stoop, kneel, crouch, and crawl. His ability for depth perception and accommodation is limited. The claimant will therefore have some difficulty with near visual details, including work with very small objects such as beads and threads. He will experience difficulty reading print-sized material such as that found in a telephone book. Tasks needing good depth perception will be precluded. The operation of commercial motor vehicles will be precluded. Unprotected heights and hazardous machinery will be precluded. He should be able to avoid common hazards in the workplace such as objects in the pathway since there is no peripheral visual field defect. At all times relevant, the claimant was limited to simple repetitive work consistent with unskilled work activity. As of May 2010, the claimant could not work with the public on more than a minimal and limited basis, and should have no more than occasional contact with coworkers.

(R. 36).

The ALJ concluded that Black was unable to return to his past relevant work. (R. 42). However, the ALJ concluded that Black did have the residual functional capacity to perform other light, unskilled jobs that exist in significant numbers in the national economy, and thus, he was not disabled. (R. 43).

    **B. Issues.** According to the plaintiff, the primary issues are as follows:

1. Whether the ALJ committed reversible error in relying on information in a residual functional capacity assessment completed by a single decision maker; and

2. Whether, in light of new material presented to the Appeals Council, the Appeals Council erred in affirming the decision of the ALJ.

(Doc. 12 p. 3).

### IV. Discussion

**A.    The ALJ did not err in determining Black's residual functional capacity.**

An ALJ is required to independently assess a claimant's residual functional capacity ("RFC")[5] "based upon all of the relevant evidence." 20 CFR § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("Responsibility for assessing residual functional capacity at the administrative law judge hearing . . . level. If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.

---

[5] "[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

1997) ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments.").

Black argues that, in considering the limiting effects of his visual impairments, the ALJ failed in her duty to independently assess his RFC because the ALJ commented that she "relied on" an RFC assessment that was completed by a single decision maker ("SDM")[6] in consultation with nontreating reviewing physician Dr. James B. Kelly. (R. 37, 281). In support of his argument, Black cites an internal Social Security Administration Memorandum and another case from this district holding that an ALJ is not entitled to rely on the opinion of a non-physician SDM as evidence of the claimaint's RFC. *See* Doc. 12-1 (May 19, 2010 Social Security Memorandum) (directing that ALJs are not permitted to treat the SDM's assessment as non-medical opinion evidence); *see also Watson v. Astrue*, Case no. 10-cv-837-WC (September 14, 2011 Memorandum Opinion and Order, pages 5-8) (reversing the denial of benefits on grounds that the ALJ rejected the treating physician's opinion of the claimant's RFC, and instead "relied on the SDM's opinion" as expert opinion evidence, even though the SDM was not a medical source). *Cf. Siverio v. Commissioner of Social Sec.* 461 Fed. Appx. 869, 872 (11th Cir. 2012) (unpublished opinion) (holding that the SDM's RFC assessment was not entitled to weight as an "expert opinion" because the SDM had "no

---

[6]"SDMs are part of a test program of the Social Security Administration for making initial disability determinations by non-medical experts. 20 C.F.R. § 404.906(a)." *Chaverst v. Astrue*, 2012 WL 5379063 at *8 (N.D. Ala. 2012). "Alabama is one of the states in which these modifications are being tested. 71 Fed. Reg. 45,890 (August 10, 2006). . . . Under [the SDM] model, a single decision maker will make the disability determination and may also determine if other conditions for entitlement to benefits based on disability are met. Under this plan, a signature from a medical or psychological consultant is not required on disability determination forms. 20 C.F.R. § 404.906." *Id*. at *9 (citation omitted).

apparent medical credential").

However, in this case, the ALJ did not abandon her task of assessing Black's residual functional capacity to the SDM's opinion, but, as required by 20 C.F.R. § 404.1546(c), the ALJ independently assessed Black's residual functional capacity based on all of the evidence in the record. *See Lewis, supra*. It is further clear from the context of the ALJ's opinion, and from the record as a whole, that the ALJ relied on the SDM's RFC assessment as evidence *only insofar as it reported the opinion of Dr. Kelly*, the state agency consulting physician.

Specifically, with respect to the extent to which Black's vision problems caused functional limitations, the ALJ explained:

> As previously noted, the claimant alleged only the ability to see out of his right eye as the basis for disability. He completed a functional report in which he attributed virtually all limitation to visual impairment of his right eye (Exhibit 5E). Although he noted several limitations, he did not report total lack of vision in the performance of any activity. In fact he initially reported that he does drive and then he annotated that he does not. However, even in this area he wrote "sight is being lost in *eye*" (*Id*. at 5) (emphasis added indicating impairment of only one eye). He provided no evidence of significant limitation in the "better" eye. As to other physical limitation the claimant revealed no limitation in *lifting*, bending, squatting, *standing*, *reaching*, *walking*, *sitting*, kneeling, hearing (see discussion above regarding Listing 1.00), or stair climbing. The use of his hands was unfettered (*Id*. at 7) (emphasis added). It should be noted that the record was void of any report of pain []associated with the claimant's eyes.
>
> As I previously shared, the claimant appealed the State agency action. He did report worsening vision from the right eye. However, beyond that report he did not reveal any evidence of any additional limitation involving his other eye or any other part of his body (Exhibit 8E). His written reports, individually and combined, provide no bases for a conclusion that the claimant suffered any physically disabling impairment.

On the basis of Dr. Kelly's review, I concluded the claimant does suffer significant visual limitation in the right eye. After failing the vision portion of the test to retain his commercial driver's license, the claimant sought several opinions. The first opinion in the evidence came around February 3, 2009. A physician at Visionamerica of Birmingham, noted problems with the right eye and none with the left (Exhibit 4F, pgs 11, 14). On February 23, 2009, physicians with Retina Consultants of Alabama, P.C., examined the claimant and offered the opinion that he suffered athrophic maculopathy of the right eye. The notes suggest it was secondary to posttraumatic asymmetric dystrophy (Exhibit 3F, pg 3). The notes suggest that the left eye was functioning normally (Id. at 2). The notes also do not provide any indication that the claimant is blind out of either eye. Additionally, no specific limitations were provided.

The claimant submitted his claim the day after his visit to Retina Consultants. The claimant returned to Visionamerica on March 13, 2009. Consistent with the claimant's application and written reports, there were no indications of limited vision with the left eye (Exhibit 4F, pg 2). Also consistent with the claimant's allegations there were no indications that the claimant was blind out of either eye. Apart from operating commercial vehicles the treatment records reveal no other specific limitation. The record is void of any additional testing or treatment after March 13, 2009. By April 9, 2009, the State agency, at the direction of Dr. Kelly, provided the diagnosis and limitations I have relied on in my decision (Exhibit 7F [*i.e.*, the SDM's RFC assessment]). ***I gave Dr. Kelly's opinion great weight*** as it is consistent with and supported by the objective, subjective, and medical evidence provided by the claimant to that point. Despite no further testing or treatment, the claimant appealed the State decision and reported that his vision had worsened. Once again, it must be noted that the record is void of any reports of pain related to his eyes.

The record is void of any additional medical evidence of testing or treatment surrounding limited vision after this time, and thus, there is no evidence of progression. Based on the evidence before me Dr. Kelly's opinion is not contradicted either by contemporary subjective report and medical evidence or medical evidence contemporary with the intervening period and the hearing.

(R. 36-37) (last emphasis added).

The court is mindful of its responsibility to "scrutinize the record in its entirety to

determine the reasonableness of the [Commissioner's] . . . factual findings." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). The court has independently considered the record as a whole and finds that the record provides substantial support for the ALJ's conclusions. Based on Dr. Kelly's review, the ALJ found that Black "does suffer significant visual limitation in the right eye." (R. 37). On a number of occasions, Black's treating physicians diagnosed maculopathy in his right eye. (R. 256, 260, 264, 270, 289-333, 335-37, 346-47, 378-87, 427-38). The treating physicians' records do not contain evidence support a finding of limited vision in the left eye beyond the general visual limitations found in the ALJ's RFC determination, and Black does not argue that such evidence exists. (*See* R. 346-47 ("[W]ith correction the patient is 20/200 in the right eye and 20/40 in the left eye")).

Accordingly, with respect to Black's visual impairments, the ALJ's residual functional capacity assessment is consistent with the opinions of Dr. Kelly as reported by the SDM, and with the medical record as a whole. The SDM stated that she consulted with Dr. Kelly in making her RFC assessment. (R. 281). In the RFC assessment, the SDM specifically stated that Dr. Kelly had opined that Black "should always use a handrail when climbing ramps or stairs. He should never use ladders, ropes, or scaffolds." (R. 282). The SDM also noted Dr. Kelly's opinion that Black "will have some difficulty with near visual details, including work with very small objects such as beads and threads or reading telephone book size print. Tasks needing good depth perception will be precluded. Operation of commercial motor vehicles will be precluded. Unprotected heights and hazardous machinery will be precluded.

[Black] should be able to avoid common hazards in the workplace such as objects in the pathway since there is no peripheral visual field defect." (R. 283). The SDM also cited Dr. Kelly's opinion that Black "should avoid hazardous machinery and unprotected heights. He should not operate commercial motor vehicles." (R. 284). The SDM also reported Dr. Kelly's opinion that Black "alleges right eye problems consistent with [right eye] maculopathy. The severity of the symptoms of monocular vision and its alleged effect on function with driving, depth perception, and fine visual discrimination is consistent with the MDI [sic]. *The claimant's complaints are credible*." (R. 285 (emphasis added)).

Black has cited no evidence from the record to contradict the ALJ's RFC determination, and, as the ALJ noted, the opinions of Black's own treating physicians are consistent with the opinion of Dr. Kelly (who, incidentally, adopted the diagnosis of Dr. Martin L. Thomley, one of Black's treating physicians) (R. 255-56, 259-61, 276, 335-37). An ALJ is entitled to rely on the opinion of a nonexamining reviewing physician whose opinion is supported by the record. *See Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) ("The opinions of nonexamining, reviewing physicians, . . . *when contrary to those of examining physicians*, are entitled to little weight in a disability case, and *standing alone* do not constitute substantial evidence." (Emphasis added.)); *see also Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990) (holding that an ALJ may rely on the assessment of a nonexamining doctor whose opinion is based on careful evaluation of the medical evidence, is not the sole medical evidence upon which the ALJ relies, and is supported by or does not

contradict the opinion of the examining doctor).

Nevertheless, Black attempts to make an issue out of the fact that Dr. Kelly did not personally sign the RFC containing the SDM's report of his comments. However, Black does not cite any legal authority for the proposition that it would be error for the ALJ to rely on the accuracy of SDM's record of what a consulting physician told her, particularly where, as here, the consulting physician *concluded that the claimant's complaints are credible* and where the remarks of the consulting physician are consistent with the medical record, including the opinions of the claimant's treating physicians. The ALJ's one sentence comment indicating that she "relied on" the RFC assessment does not constitute reversible error because the ALJ expressly assigned of "great weight" to medical source opinions (not to the opinion of the SDM), the ALJ considered whether the medical record as a whole supported the RFC determination, and the record as a whole does in fact substantially support the ALJ's conclusion. *Cf. Castel v. Comm'r of Soc. Sec.*, 355 Fed. Appx. 260, 265-66 (11th Cir. 2009) (unpublished opinion) ("This Court does not need to determine" whether the SDM or the consulting physician "signed the [RFC assessment] in question. The ALJ references the [RFC assessment] at issue in two sentences, but dedicates two paragraphs to the reports of Drs. Adam and Cusco. The record does not reflect that the ALJ placed great weight on the [RFC asessment], as [the claimant] contends. Rather, the evaluations by Drs. Adam and Cusco seem to have been the primary basis for the ALJ's decision. The [SDM's] report merely confirmed this objective medical evidence. This Court does not find any error caused

by the ALJ's reference to this [RFC assessment], and to the extent that one could argue that the ALJ erred, the error would not rise above the level of harmless error.").

Accordingly, the court finds that the ALJ did not commit reversible legal error and that the ALJ's RFC determination is supported by substantial evidence.

**B.     The Appeals Council did not err in affirming the ALJ's decision despite new evidence presented by Black.**

Black argues that new evidence submitted to the Appeals Council demonstrates that his mental impairment is severe, contrary to the ALJ's determination. When "new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. §§ 404.970(b), 416.1470(b).

There is no indication that the new evidence pertains to the period on or before July 2, 2010, the date of the ALJ's decision.[7] The new evidence Black submits as grounds

---

[7]No argument can be made that the ALJ failed in her duty to adequately develop the record with respect to her efforts to obtain Dr. Rowe's opinion.  The court notes the ALJ's substantial efforts to obtain all relevant medical documentation from Black's mental health providers, as documented in her opinion:

> The representative expressed a need to keep the record open for submission of additional evidence. Four months later, she submitted two exhibits. One was an update from Dr. Bartel whose records were previously submitted at Exhibit 8F and 9F. The updates are now admitted as Exhibit 12F. There was also substantial discussion during the hearing as to the

claimant's psychological impairments. I have discussed this issue below in more detail. However, I note that the representative also submitted treatment records from Dr. Rowe, now admitted at Exhibit 13F.

. . . .

[T]he claimant must furnish medical and other evidence that we can use to reach conclusions about medical impairment(s) and, if material to the determination of disability, its effect on the ability to work on a sustained basis. The regulations further specify that we will consider only impairment(s) the claimant tells us about or about which we receive evidence. We make every reasonable effort to obtain all relevant and available medical evidence about mental impairment(s), including its history, and any records of mental status examinations, psychological testing, and hospitalizations and treatment. Although these same regulations indicate that we will assist the claimant in developing the medical record, it remains incumbent on the claimant to make the Agency aware of the information that is needed. Obviously, the claimant did not make the Agency aware of a mental impairment or of treating records at the time of application; at the time of the completion of the functional report; or upon requesting the hearing (See Introductory Listing 12.00D and D1a and 20 CFR 404.1512, 416.912).

Despite reports of an alleged twenty year treatment history for psychosis-including hospitalizations-at the time of the hearing, the claimant's representative, provided me only with evidence of treatment dating back only to May 2008 (Exhibit 10F, pg 2). I asked the claimant and his representative what other documentation might exist to demonstrate the existence of a 20 year long impairment. The claimant stated that he had had treatment previously for this condition with Dr. Ready, approximately 6 years earlier, and a hospitalization 20 years ago. The representative maintained that she had attempted to obtain the hospitalization records from 20 years ago, but reported that these are unavailable due to remoteness. The representative also reported that she wrote to Dr. Ready and the hospital where she practiced, but the source reported that there are no records for this claimant. When I asked when he started with Dr. Lusche, the claimant said that treatment there commenced six or seven years earlier, after Dr. Ready left the area. I asked the representative if the Exhibit at 10F demonstrating treatment only to May 2008 were the only record available, and she stated that this was all that could be procured. The regulations only require that the Agency develop the record for the 12 months preceding the filing date, unless there is a reason to believe that earlier development is necessary. The filing date was February 2009, and the May 2008 records fall somewhat short of the 12 month development timeline suggested by the regulations. However, the representative offered that there was nothing earlier. Even so, the alleged onset date was only January 2009, and thus, only one month before the application date. Therefore, Dr. Lusche's May 2008 records served to document 8 months of treatment prior to the alleged onset date, and thus are adequate for decision making. Nonetheless, I encouraged the representative to obtain anything else she felt relevant and supportive of the claimant's allegations about the long standing psychosis and attendant difficulties. Consequently, I left the record open for the claimant and his attorney to present such evidence. No additional evidence was submitted and as the representative indicated that records were not available, and I concluded that the record is

for reversal are two medical source opinion forms completed after the ALJ's July 2, 2010 decision; one form was completed by Dr. Heather Rowe on July 19, 2010, and the other was completed by Dr. Rowe and a counselor on November 22, 2010. (Doc. 12 p. 7; R. 245-47, 439-40). Dr. Rowe's July 19, 2010 medical source opinion does not indicate that it pertains to the period before July 3, 2010, as it consists only of checkmarks in various boxes on a form indicating her opinion as to the extent of Black's mental limitations, with no written explanations. (R. 246-47). The November 22, 2010 form also consists mostly of checked boxes, but includes limited written commentary. (R. 439-440). Notably, the comments on the November 22, 2010 form state that stress from being unable to work caused Black to decompensate, that Black was withdrawn, irritable, angry, and limited in his ability to interact with others and respond appropriately in a work setting, and that the mental limitations indicated on the form were *first found to be present in July and August 2010*. (R. 440). As the limitations in the July 19, 2010 medical source opinion are consistent with those in the

---

> complete. However, while drafting this decision, the representative submitted additional records four months later from Dr. Rowe that also represent treatment for psychological issues.
>
> I have considered all that was submitted, but the record before me does not support a finding that the claimant has a severe mental impairment.

(R. 21, 27-28).

Clearly, up until the date the ALJ issued her opinion, the ALJ actively undertook extensive efforts to obtain and consider evidence of Black's alleged mental disorder, including medical records and opinions from Dr. Rowe (which were provided while the ALJ was drafting the opinion). Under the circumstances, the fact that the additional evidence from Dr. Rowe was not submitted to the Commissioner until after the ALJ issued her opinion further confirms that the additional evidence does not pertain to the time period on or before the date of the ALJ's opinion.

November 22, 2010 medical source opinion, there is no basis to conclude that any of the limitations in either document were first found to be present before July and August 2010.[8] (R. 440, 246-47).

Black argues, nevertheless, that the new evidence is material to the case because, in finding that Black did not meet the listing, the ALJ stated that the medical record indicated no prognosis, but, "[g]iven the claimant's stability for a long period of time, including his 23 year history of successful work, I am apt to believe he will continue to improve with intervention and medication compliance." (R. 34). Even if, as Black argues, the new evidence provides some indication that the ALJ was wrong about what might happen *after the date of her decision*, any failure by the ALJ to accurately prognosticate the future is not material to her opinion. The ALJ followed her comment about the likelihood of future improvement with the following statements: "However, *even if the claimant did not steadily improve*, at most, I would find that he had no impairment in his activities of daily living as a result of the disorder. . . . *[E]ven if I concluded that he would not improve* within 12 months, this would not support a finding that he met a listing according to the next, third step that I consider below." (R. 34 (Emphasis added.)). Thus, the ALJ's comment about Black's likelihood of future improvement was not material to her decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) (providing that "[t]he Appeals Council shall evaluate . . . new and

---

[8] The court notes that, following a second application for benefits that is not at issue in this appeal, the Commissioner has deemed Black to be disabled as of July 3, 2010, the day after the issuance of the ALJ's opinion in this case. (Doc. 12-4).

*material* evidence . . . if it relates to the period on or before the date of the administrative law judge hearing decision" (emphasis added)).

Because the new evidence is not material and because it does not pertain to the period on or before the date of the ALJ's decision, the Appeals Council was not required to remand the case in light of that evidence. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b).

## CONCLUSION

For the reasons as stated, the court concludes that the decision of the Commissioner denying benefits to Black should be affirmed.

The Court will enter a separate final judgment.

Done this 27th day of March, 2013.

           /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE